IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case Nos. 07-03121 through |
| | ) | 07-03123 and 07-03125 |
| | ) | |
| MILLCREEK BROADCASTING, L.L.C., | ) | Chapter 11 |
| et al.,[1] | ) | |
| | ) | Hon. Jacqueline P. Cox |
| Debtors. | ) | |
| | ) | **Hearing Date:  August 14, 2007** |
| | ) | **Hearing Time: 9:30 a.m.** |

## NOTICE OF MOTION

PLEASE TAKE NOTICE THAT on July 24, 2007, the Debtors filed this **MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. § 105(a) AND FED. R. BANKR. P. 3003(c)(3) (I) SETTING FINAL DATE AND PROCEDURES FOR FILING PROOFS OF CLAIM AND (II) APPROVING THE FORM AND MANNER OF NOTICE THEREOF.**

Dated:  July 24, 2007

        SKADDEN, ARPS, SLATE,
         MEAGHER & FLOM LLP
        Timothy R. Pohl (ARDC No. 06208157)
        Felicia Gerber Perlman (ARDC No. 06210753)
        333 West Wacker Drive
        Chicago, Illinois  60606-1285
        (312) 407-0700

        */s/ Timothy R. Pohl*
        Attorneys for Debtors and
        Debtors-in-Possession

---

[1]   The Debtors consist of: Millcreek Broadcasting, L.L.C. (EIN: 36-4265091); 3 Point Media – Delta, L.L.C. (EIN:61-1421503); 3 Point Media – Franklin, L.L.C. (EIN: 36-4499087) and 3 Point Media – Utah, L.L.C. (EIN: 36-4470799).

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>MILLCREEK BROADCASTING, L.L.C.,<br>    et al.,[2]<br><br>                    Debtors. | ) Case Nos. 07-03121 through<br>)     07-03123 and 07-03125<br>)<br>) Chapter 11<br>)<br>) Hon. Jacqueline P. Cox<br>)<br>) **Hearing Date:  August 14, 2007**<br>) **Hearing Time: 9:30 a.m.** |

**MOTION FOR ORDER UNDER 11 U.S.C. § 105(a) AND FED. R. BANKR. P. 3003(c)(3) (I) SETTING FINAL DATE AND PROCEDURES FOR FILING PROOFS OF CLAIM AND (II) APPROVING THE FORM AND MANNER OF NOTICE THEREOF**

Millcreek Broadcasting, LLC ("Millcreek"), 3 Point Media – Delta, LLC ("3 Point Media – Delta"), 3 Point Media – Franklin, LLC ("3 Point Media – Franklin") and 3 Point Media – Utah, LLC ("3 Point Media – Utah"), debtors and debtors-in-possession in the above-captioned cases (each a "Debtor" and collectively, the "Debtors" or the "Company") hereby move for entry of an order under 11 U.S.C. § 105(a) and Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure, (I) setting final date and procedures for filing proofs of claim and (II) approving the form and manner of notice thereof (the "Motion").  In support of the Motion, the Debtors respectfully represent as follows:

**BACKGROUND**

**A.    The Chapter 11 Filing**

1.    On February 22, 2007 (the "Petition Date"), four creditors filed involuntary chapter 11 petitions against each of the Debtors in this Court for reorganization relief under chapter 11

---

[2]  The Debtors consist of: Millcreek Broadcasting, L.L.C. (EIN: 36-4265091); 3 Point Media – Delta, L.L.C. (EIN:61-1421503); 3 Point Media – Franklin, L.L.C. (EIN: 36-4499087) and 3 Point Media – Utah, L.L.C. (EIN: 36-4470799).

of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended (the "Bankruptcy Code"). On May 11, 2007, the Debtors filed the Debtors' Answer to Involuntary Chapter 11 Petitions (the "Answer") consenting to reorganization relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have requested that the four chapter 11 cases (the "Chapter 11 Cases") be jointly administered.

2. On May 24, 2007, an official committee of unsecured creditors was appointed by the United States Trustee in these Chapter 11 Cases. No trustee or examiner has been appointed in any of the Debtors' chapter 11 Cases.

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4. The statutory predicates for the relief requested herein are section 105(a) of the Bankruptcy Code and rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**B.     Background and Current Business Operations**

5. Founded in 1998, the Debtors operate FM radio stations in and around Salt Lake City, Utah. The Debtors consist of four Illinois Limited Liability Companies: Millcreek, 3 Point Media – Delta, 3 Point Media – Franklin and 3 Point Media – Utah, which operate together from a single facility in Salt Lake City. Salt Lake City is ranked as the 31st largest radio market in the United States. The Debtors are comprised of (i) an operating segment that runs four FM stations that are currently on-air and producing revenue and cash flow and has a total audience share between 7% and 8% of the Salt Lake City radio market, and (ii) a developmental segment which includes Federal Communications Commission ("FCC") granted licenses and construction permits for three additional

2

FM radio stations scheduled to go on-air during 2007 and/or 2008.  Launching these additional stations requires the execution of an engineering plan, which includes the physical relocation of the radio signal, a change in the direction and power of the signal and a change in the FCC designated city of license, all of which are predicated upon FCC approval and applicable state and local zoning and permitting processes.

6. The Debtors' operating strategy has been to create value through moving radio stations from smaller markets outside Salt Lake City to the Salt Lake City market.  The Debtors accomplish this by (i) locating and acquiring out of market radio licenses that can be moved to Salt Lake City through FCC rulemaking and tower site, antennae and transmitter construction, thus making the station more valuable, (ii) once the stations are broadcasting, achieving cost efficiencies through common infrastructure and cost sharing, (iii) refining each station's programming through audience research and music testing to match the preferences of the target demographic audience and (iv) positioning station clusters to compete favorably with other radio broadcastings and other media through the ability to draw a large and broad listening audience due to the diverse station formats.

C.    **Prepetition Capital Structure**

7. In May 2003, the Debtors entered into a credit agreement with D.B. Zwirn Special Opportunities Fund, L.P. (f/k/a Highbridge/Zwirn Special Opportunities Fund, L.P.) as agent (the "Prepetition Agent") and the financial institutions from time to time signatory thereto as lenders (the "Prepetition Senior Lenders") dated as of May 13, 2003 (as amended, modified, restated or supplemented, the "Prepetition Financing Agreement").  The maturity date of the Obligations (as defined in the Prepetition Financing Agreement) under the Prepetition Financing Agreement was December 31, 2005.  Notwithstanding the occurrence of the maturity date, the Debtors were unable to pay the amounts due and owing to the Prepetition Agent and the Prepetition Senior Lenders under the terms of the Prepetition Financing Agreement.  As of the Petition Date, the Obligations due and owing

to the Prepetition Agent and Prepetition Senior Lenders aggregated approximately $105.5 million, including accrued and unpaid principal, interest, fees, costs and expenses, all as provided for in the Prepetition Financing Agreement. The Obligations are secured by liens on substantially all of the Debtors' assets, and the Debtors believe that the amount of the Obligations far exceeds the value of the Debtors' assets on either a going concern or liquidation basis.

8. In addition, in May 2003, Millcreek and Rocky Mountain Radio Network, Inc. ("Rocky Mountain")[3] entered into a Subordinated Loan Agreement, dated May 13, 2003 (the "Subordinated Loan Agreement"), with Alta Communications VII, L.P. ("Alta Communications"), Alta VII Associates, L.L.C. ("Alta Associates", and together with Alta Communications, collectively, "Alta"), Peter Handy ("Handy"), Monroe Partners IX, L.P. ("Monroe"), BPIB – Utah, L.L.C. ("BPIB"), Bruce A. Buzil ("Buzil") and Christopher F. Devine ("Devine"). As of the Petition Date, the obligations due and owing under the Subordinated Loan Agreement aggregate approximately $47 million including accrued and unpaid principal and interest. The proceeds of the Subordinated Loan Agreement were used to refinance existing Millcreek and Rocky Mountain indebtedness and to redeem certain Class A Preferred Units from certain of the Subordinated Creditors.

9. Millcreek, 3 Point Media - Utah and 3 Point Media - Franklin also borrowed money from, and issued promissory notes, certain affiliates, as evidenced by: (a) Subordinated Unsecured Promissory Note, dated May 13, 2003, made by Millcreek in the principal amount of $13,050,000, payable to the order of Lakeshore Media, LLC ("Lakeshore"); (b) Promissory Note, dated July 19, 2002, made by 3 Point Media - Utah, in the principal amount of $2,239,618, and assigned jointly to Northland Holding Trust ("Northland"), Robert E. Neiman ("Neiman") and Buzil on May 14, 2003, and subsequently assigned to Millcreek on May 13, 2003, and (c) Promissory Note,

---

[3] Rocky Mountain was a wholly-owned subsidiary of Millcreek until it was sold in April 2005.

dated July 19, 2002, made by 3 Point Media - Franklin, in the principal amount of $1,798,937, and assigned jointly to Northland, Neiman, and Buzil on May 13, 2003, and subsequently assigned to Millcreek on May 13, 2003 (collectively, the "Affiliate Notes", and together with the Subordinated Loan Agreement, the "Subordinated Debt").  Alta, Handy, Monroe, BPIB, Buzil, Devine, Lakeshore, Northland and Neiman are collectively referred to herein as the "Subordinated Creditors."

    10. All obligations owed to the Subordinated Creditors are contractually subordinate to the obligations owed to the Prepetition Senior Lenders.  Such subordination is evidenced by (a) the Subordination Agreement, dated May 13, 2003, among the Prepetition Agent, the Subordinated Creditors party thereto and the Debtors, pursuant to which, among other things, the Subordinated Creditors party thereto acknowledged and agreed that all indebtedness, obligations and other liabilities owing to such Subordinated Creditors under the Subordinated Loan Agreement (including, without limitation, all fees, premiums, costs, expenses and other amounts payable in respect thereof), are junior and subordinate in right of payment to the infeasible payment in full in cash of the Prepetition Agent and Prepetition Senior Lenders' Obligations, and (b) a Subordination Agreement, dated May 13, 2003, among each Person listed on the signature pages of such Subordination Agreement, Millcreek, 3 Point – Utah, 3 Point – Franklin and Rocky Mountain (the "Affiliate Subordination Agreement", and together with the Alta Subordination Agreement, the "Subordination Agreements") pursuant to which, among other things, the Subordinated Creditors party thereto acknowledged and agreed that all indebtedness, obligations and other liabilities owing to them under the Affiliate Notes is junior and subordinate to the extent set forth in the Affiliate Subordination Agreement in right of payment to the indefeasible payment in full in cash of the Prepetition Agent and the Prepetition Senior Lenders' obligations.

**D.  Events Leading to a Chapter 11 Filing**

11. In the summer of 2000, the Debtors began to execute on a strategy that redefined the Salt Lake City FM radio market. The central element of this strategy was the location, development and construction of a new radio tower site that would serve the Salt Lake City market. The tower, located at Humpy Peak, in Utah, also utilizes 4 booster sites, and was named the Humpy Peak Booster System. Humpy Peak is the main site. Booster sites are located at Ogden, Bountiful, Salt Lake City, and Provo.

12. The Debtors' business strategy has taken longer than expected and has cost significantly more than estimated due to regulatory delays, market competition within the Salt Lake City market and the complexity of the technical and operational challenges associated with building the Humpy Peak Booster System. The Prepetition Senior Lenders amended the Prepetition Financing Agreement on several occasions to provide additional financing to the Debtors to cover these increased costs. As described above, however, the obligations under the Prepetition Financing Agreement matured in December 2005 and the Prepetition Senior Lenders informed the Debtors that they were no longer willing to provide additional financing to the Debtors. Consequently, the Debtors tried to refinance their debt or sell their assets to repay in full the Prepetition Senior Lenders. Such efforts, however, were unsuccessful. Based on the Debtors non-payment of the Obligations under the Prepetition Financing Agreement, which, as stated above, far exceed the value of the Debtors' businesses, the Prepetition Senior Lenders filed the involuntary petitions against the Debtors.

13. The Debtors believe that the best way to maximize the value of their estates for the benefit of their creditors is to preserve the going concern value of the Debtors' businesses through a sale of their radio stations and related assets. Over the past two years, the Debtors have engaged in extensive marketing efforts to sell one or more of their radio stations. Throughout this process, the Debtors did not receive any bids that would have provided enough consideration to pay the Obligations

6

owing to the Prepetition Senior Lenders or that otherwise were acceptable to them.  Because the Prepetition Senior Lenders hold claims secured by liens on substantially all of the Debtors' assets, and are owed amounts that significantly exceed the value of the Debtors, the Prepetition Senior Lenders are today the economic owners of the Debtors' businesses.  Given the results of the Debtors' prior marketing efforts and the amount by which the Obligations owing to the Prepetition Senior Lenders exceed the value of the Debtors' assets, the Debtors do not believe that it is in the best interest of their estates and creditors to incur the additional costs and expenses to conduct another sale process to try to solicit further bids.

14. As a result, the Debtors have negotiated an agreement with the Prepetition Senior Lenders that provides for the Prepetition Senior Lenders (or their designee) to purchase the Debtors' assets through a credit bid in the amount of $35 million.  On July 23, 2007, the Debtors filed a motion (the "Sale Motion") seeking approval of the sale of substantially all of the Debtors' assets to the Prepetition Senior Lenders.  Notably, the agreement negotiated with the Prepetition Senior Lenders does far more than simply hand the Prepetition Senior Lenders the keys to the Debtors' assets.  The Prepetition Senior Lenders have agreed to, among other things, (i) provide for the payment of allowed administrative claims in these cases in accordance with the DIP Order, (ii) provide for the payment of ordinary course prepetition trade obligations to the Debtors' creditors that have ongoing business relationships with the Debtors in accordance with the DIP Order, (iii) provide for the payment of obligations to pay budgeted professional fees in accordance with the DIP Order and (iv) provide for the payment of a "wind-down" budget to allow the Debtors in accordance with the Purchase Agreement, after consummation of a sale, to appropriately wind-up these estates via a liquidating chapter 11 plan or other appropriate means.  These agreements provide significant benefit to creditors of the Debtors

7

other than the Prepetition Senior Lenders, and ensure that these cases can be conducted and concluded consistent with the objectives and requirements of the Bankruptcy Code.

### RELIEF REQUESTED

15.     By this Motion, the Debtors seek entry of an order establishing procedures and fixing the last date within which certain proofs of claim against the Debtors must be filed (the "Bar Date").

### BASIS FOR RELIEF

16.     Bankruptcy Rule 3003(c)(3) provides: "The court shall fix . . . the time within which proofs of claim or interest may be filed."  The Debtors believe that the Court should fix the Bar Date at this time and request, for the reasons set forth below, that the Court set **October 19, 2007** as the Bar Date, except for Governmental Units (as defined in the Bankruptcy Code) which shall have a bar date of **November 12, 2007** pursuant to Section 502(b)(9).  The Debtors' schedules of assets, liabilities and executory contracts and statements of financial affairs (the "Schedules") were filed with this Court on June 14, 2007.  The Debtors seek to establish a Bar Date to determine what, if any, claims are asserted against the Debtors in addition to those listed on the Schedules.

17.     The Debtors request that proofs of claim be filed by creditors of any of the Debtors on account of any claim (as defined in Section 101(5)) arising before May 15, 2007 (the "Relief Date").  However, the Debtors request that proofs of claim with respect to any claim arising after the Petition Date, but before the Relief Date (the "Gap Period Proofs of Claim"), be filed by creditors separately from any claim of such creditors arising prior to the Petition Date.  Nevertheless, creditors holding or wishing to assert the following types of claims against the Debtors need not file a proof of claim:

8

  (i)  any Entity that has already properly filed a proof of claim against one or more of the Debtors in accordance with the procedures set forth in the Bar Date notice;

  (ii)  any Entity (i) that agrees with the nature, classification and amount of such Claim set forth in the Schedules and (ii) whose Claim against a Debtor is not listed as "disputed," "contingent," or "unliquidated" in the Schedules;

  (iii)  any Entity whose Claim against a Debtor previously has been allowed by, or paid pursuant to, an order of the Bankruptcy Court;

  (iv)  any Entity asserting a Claim allowable under Sections 503(b) as an administrative expense of the Debtors' Chapter 11 cases; or

  (v)  any of the Debtors that hold Claims against one or more of the Debtors.

18.  Further, the Debtors request that proofs of claim for any rejection damages claims arising during these Chapter 11 Cases under sections 365(g) and 502(g) of the Bankruptcy Code be filed by the later of (i) thirty days after the date of any order authorizing the Debtors to reject such executory contract or unexpired lease or (ii) the Bar Date. Proofs of claim for any other claims that arose prior to the Relief Date under a lease or contract must be filed by the Bar Date.

19.  For administrative convenience, the notice of the Bar Date (attached as <u>Exhibit A</u> to the proposed order, the "<u>Bar Date Notice</u>") contains notice of the Bar Date for all four cases of the Debtors. Nevertheless, because each proof of claim must be filed against a particular Debtor, the Bar Date Notice explains the requirement that all proofs of claim name the specific Debtor against which a creditor asserts a claim. This requirement will make the Debtors' claim analysis more efficient and less costly to their estates.

20.  To provide ample time for (i) mailing the requisite Bar Date Notice and (ii) allowing the Debtors' creditors a reasonable opportunity to prepare and file proofs of claim, the Debtors are requesting that this Court fix **October 19, 2007** as the Bar Date, with notices to be mailed no later than **August 17, 2007**. An **October 19, 2007** Bar Date and a **August 17, 2007** mailing date

9

will allow a period of approximately 60 days for creditors to file proofs of claims, which is more than sufficient notice of the Bar Date.

21.     Pursuant to Rule 2002(a)(7), the Debtors intend (i) to mail the Bar Date Notice to all known creditors by no later than **August 17, 2007**, and (ii) to publish notice in a form substantially similar to the Bar Date Notice in the New York Times (national edition) by **August 20, 2007** or as soon thereafter as practical.  As a result, creditors of the Debtors will have well in excess of the twenty-day period prescribed by Rule 2002(a)(7) for notice of the Bar Date.

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form of the order attached hereto and grant such other and further relief as may be just and proper.

Dated:  Chicago, Illinois
        July 24, 2007

        SKADDEN, ARPS, SLATE, MEAGHER
           & FLOM LLP

By: */s/ Timothy R. Pohl* _____
Timothy R. Pohl (ARDC No. 06208157)
Felicia Gerber Perlman (ARDC No. 06210753)
333 West Wacker Drive
Chicago, Illinois  60606-1285
(312) 407-0700

Attorneys for the Debtors and
Debtors-in-Possession