UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Case Nos. 07-03121 through |
| | ) | 07-03123 and 07-03125 |
| MILLCREEK BROADCASTING, L.L.C., | ) | |
| et al.[1] | ) | Chapter 11 |
| Debtors. | ) | Hon. Jacqueline P. Cox |
| | ) | |
| | ) | **Hearing Date: January 13, 2011 at 10:30 a.m.** |
| | ) | **Obj. Deadline: January 7, 2011 at 5:00 p.m.** |

## NOTICE OF APPLICATION

Please take notice that on December 21, 2010, Skadden, Arps, Slate, Meagher & Flom LLP filed the **FOURTH INTERIM APPLICATION OF ZOLFO COOPER, LLC AS SPECIAL FINANCIAL ADVISORS AND BANKRUPTCY CONSULTANTS TO THE DEBTORS FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE INTERIM PERIOD FROM JANUARY 1, 2009 THROUGH JULY 31, 2010, AND FINAL APPLICATION OF ZOLFO COOPER, LLC FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AS SPECIAL FINANCIAL ADVISORS AND BANKRUPTCY CONSULTANTS TO THE DEBTORS AND FOR REIMBURSEMENT OF EXPENSES UNDER 11 U.S.C. § 330(A).**

Dated: Chicago, Illinois
     December 21, 2010

/s/  *Jonathan G. Pfleeger*
Matthew M. Murphy (ARDC No. 06257958)
Jonathan G. Pfleeger (ARDC No. 06280869)
SKADDEN ARPS SLATE MEAGHER
  & FLOM LLP
155 North Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 407-0700

Attorneys for Debtors

---

[1] The Debtors consist of: Millcreek Broadcasting, L.L.C. (EIN: 36-4265091); 3 Point Media – Delta, L.L.C. (EIN: 61-1421503); 3 Point Media – Franklin, L.L.C. (EIN: 36-4499087) and 3 Point Media – Utah, L.L.C. (EIN: 36-4470799).

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>MILLCREEK BROADCASTING, L.L.C., et al.<br><br>Debtors | Chapter 11<br><br>Case Nos. 07-03121 through 07-03123 and 07-03125<br>Hon. Jacqueline P. Cox<br>(Jointly Administered)<br><br>Hearing Date: Jan. 13, 2011<br>Hearing Time: 10:30 a.m.<br>Objection Deadline: Jan 7, 2011 at 5:00 p.m. (Central) |

**FOURTH INTERIM APPLICATION OF ZOLFO COOPER, LLC AS SPECIAL FINANCIAL ADVISORS AND BANKRUPTCY CONSULTANTS TO THE DEBTORS FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE INTERIM PERIOD FROM JANUARY 1, 2009 THROUGH JULY 31, 2010, AND FINAL APPLICATION OF ZOLFO COOPER, LLC FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AS SPECIAL FINANCIAL ADVISORS AND BANKRUPTCY CONSULTANTS TO THE DEBTORS
<u>AND FOR REIMBURSEMENT OF EXPENSES UNDER 11 U.S.C. § 330(a)</u>**

TO THE HONORABLE JACQUELINE P. COX,
UNITED STATES BANKRUPTCY JUDGE:

Zolfo Cooper, LLC formerly known as Kroll Zolfo Cooper LLC (collectively, "<u>ZC</u>" or the "Applicant"), as Special Financial Advisors and Bankruptcy Consultants for Millcreek Broadcasting, L.L.C., et al,, chapter 11 debtors in possession (the "<u>Debtors</u>"), as and for their application for allowance of interim compensation for professional services performed by ZC for the period commencing January 1, 2009 through and including July 31, 2010 (the "4th Interim <u>Compensation Period</u>") and reimbursement of their actual and necessary expenses incurred during the 4th Interim Compensation Period, and for allowance of all fees and expenses incurred on a final basis (collectively the "Final Application"), respectfully represent:

4

## Background

1. On February 22, 2007 (the "Petition Date"), four creditors filed involuntary chapter 11 petitions against Millcreek Broadcasting, LLC ("Millcreek"), 3 Point Media – Delta, LLC ("3 Point Media – Delta"), 3 Point Media – Franklin, LLC ("3 Point Media – Franklin"), and 3 Point Media – Utah, LLC ("3 Point Media – Utah"), debtors and debtors-in-possession in the above-captioned cases (each a "Debtor" and collectively, the "Debtors" or the "Company") in this Court for reorganization relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"). On May 11, 2007, the Debtors filed the Debtors' Answer to Involuntary Chapter 11 Petitions (the "Answer") consenting to reorganization relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

2. The Debtors are complex enterprises principally engaged in the Radio Industry and certain related businesses, with operations located in Salt Lake City, UT. The Debtors required the services of experienced Bankruptcy Consultants and Special Financial Advisors to assist them in restructuring the business and developing, negotiating and confirming plans of reorganization. This is the Final Application of ZC for allowance of fees and expenses in this case. Because of ZC's expertise and experience at a national level in providing reorganization, accounting and a broad range of consulting services to Debtors and other parties in interest in financially complex troubled situations, the Debtors applied to the Bankruptcy Court to authorize ZC's retention as Bankruptcy Consultants and Special Financial Advisors to the Debtors.

3. The Bankruptcy Court entered an order (the "Retention Order") on June 13, 2007, nunc pro tunc to May 15, 2007, authorizing the retention of ZC to:

   (a) Advise and assist management in organizing the Debtors' resources and activities so as to effectively and efficiently plan, coordinate and manage the chapter 11 process and

5

            communicate with customers, lenders, suppliers, employees, shareholders and other parties in interest;

(b)    Assist management in designing and implementing programs to manage or divest assets, improve operations, reduce costs and restructure as necessary with the objective of rehabilitating the business;

(c)    Advise the Debtors concerning interfacing with Official Committees, other constituencies and their professionals, including the preparation of financial and operating information required by such parties and/or the Bankruptcy Court;

(d)    Advise and assist management in the development of a Plan of Reorganization and underlying Business Plan, including the related assumptions and rationale, along with other information to be included in the Disclosure Statement;

(e)    Advise and assist the Debtors in forecasting, planning, controlling and other aspects of managing cash, and, if necessary, obtaining DIP and/or Exit financing;

(f)    Advise the Debtors with respect to resolving disputes and otherwise managing the claims process;

(g)    Advise and assist the Debtors in negotiating a Plan of Reorganization with the various creditor and other constituencies;

(h)    As requested, render expert testimony concerning the feasibility of a Plan of Reorganization and other matters that may arise in the case; and

(i)    Provide such other services as may be required by the Debtors.

4.    A copy of the Order authorizing the retention of ZC as Special Financial Advisors and Bankruptcy Consultants to the Debtors, along with the related application to the Bankruptcy Court for such retention authority is attached as Exhibit "A". Additionally in Exhibit "A" includes the Order authorizing the re-retention of ZC as successor in interest to ZC, along with the related application to the Bankruptcy Court for such retention authority, and a certification in support of the re-retention application. The Retention Order and Re-Retention Order authorized the Debtor to pay the fees for services rendered and ZC's out-of-pocket expenses, as reflected on each monthly invoice. Such payment is to be made by the Debtor upon receipt of ZC's monthly invoice, subject to final allowance by the Bankruptcy Court.

## Certification

5. Jonathan Mitchell, a Senior Managing Director in the firm of ZC, as the professional designated by the Applicant with the responsibility for compliance with the United States Trustee Guidelines, certifies that except as otherwise noted elsewhere herein:

1)    a)    He has read this application,

       b)    To the best of his knowledge, information and belief, formed after reasonable inquiry:

            i.    This application complies with the mandatory provisions of the United States Trustee Guidelines,

            ii.    The fees and out-of-pocket expenses are billed in accordance with the billing practices described below, and except as otherwise indicated therein fall within the United States Trustee Guidelines, and

            iii.    Except to the extent prohibited by the United States Trustee Guidelines, the fees and out-of-pocket expenses sought herein have been billed at rates and in accordance with practices customarily employed by the Applicant and accepted by the Applicant's clients.

2)    This Final Application for allowance of fees and reimbursement of out-of-pocket expenses has been reviewed and approved by the Debtors.

3)    The Debtors, the Trustee and the Chair of each Official Committee has each been provided, no later than twenty days after the end of each month within the Application Period, a statement of fees for services and out-of-pocket expenses accrued during such month and containing a list of professionals, paraprofessional and support personnel providing services; their respective billing rates; the aggregate hours expended by each such person; a general description of the services rendered, summarized by discrete project; a detailed description of the services performed by each professional, paraprofessional and support person and the time expended, organized by debtor, by discrete project, by day.

4)    With respect to expenses and reimbursable services incurred for which reimbursement is sought, ZC:

       a)    Does not make a profit;

       b)    Does not include in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment or capital outlay; and

7

      c)      Seeks reimbursement of services purchased from or contracted for with a third-party vendor only in the amount billed to the Applicant by and paid or to be paid by the Applicant to the vendor.

6.      The affiant presently intends to attend the fee hearing; however, if he is unable to do so, he will arrange for a member of the firm, authorized to speak for the firm, to be present.

### Relief Requested

7.      This application is made for 4th Interim Compensation Period and for final allowance of compensation for services rendered by ZC as Special Financial Advisors and Bankruptcy Consultants to the Debtors and for reimbursement of necessary expenses actually incurred during the period from May 15, 2007 through July 31, 2010 (the "Application Period"). ZC filed three previous applications for allowance of interim compensation and reimbursement of expenses during the Application Period.

8.      ZC provided an aggregate of 793.9 hours of service as Special Financial Advisors and Bankruptcy Consultants to the Debtors for professional and paraprofessional services, thereby incurring professional fees of $382,851.50, paraprofessional fees of $3,737.50, and reimbursable expenses of $19,920.97.

9.      During the 4th Interim Compensation Period, ZC has provided 76.1 hours of professional services and 2.3 hours of paraprofessional services as Special Financial and Bankruptcy Consultants to the Debtors, thereby incurring professional fees of $32,793.50, paraprofessional fees of $517.50, and reimbursable expenses of $621.11, totaling $33,932.11. A summary of the monthly invoices issued for the 4th Interim Compensation Period, showing the hours expended and the amounts of fees and expenses incurred is set forth below:

8

|  | 2009 | | | | | |
|---|---|---|---|---|---|---|
|  | Jan | Feb | Mar | Apr | May | Jun |
| Invoice # | 9300161 | 9300163 | 9300164 | 9300167 | 9300168 | 9300169 |
| **Hours Expended** | | | | | | |
| Professional | 1.2 | 18.9 | 2.0 | 2.0 | 5.0 | 2.0 |
| Paraprofessional | - | - | - | - | - | - |
| Total Hours | 1.2 | 18.9 | 2.0 | 2.0 | 5.0 | 2.0 |
| **Fees Incurred:** | | | | | | |
| Professional | $ 522.00 | $ 8,221.50 | $ 790.00 | $ 790.00 | $ 1,975.00 | $ 790.00 |
| Paraprofessional | - | - | - | - | - | - |
| Total Fees | 522.00 | 8,221.50 | 790.00 | 790.00 | 1,975.00 | 790.00 |
| Direct Expenses Incurred | 147.31 | 127.50 | 20.60 | 40.58 | 27.30 | 25.37 |
| Subtotal | 669.31 | 8,349.00 | 810.60 | 830.58 | 2,002.30 | 815.37 |
| Less 10% Holdback | (52.20) | (822.15) | (79.00) | (79.00) | (197.50) | (79.00) |
| Net Amount Invoiced | 617.11 | 7,526.85 | 731.60 | 751.58 | 1,804.80 | 736.37 |
| Amount Received | (617.11) | (7,526.85) | (731.60) | (751.58) | (1,804.80) | (736.37) |
| Unpaid Invoice amount | - | - | - | - | - | - |

|  | 2009 | | | | | |
|---|---|---|---|---|---|---|
|  | Jul | Aug | Sept | Oct | Nov | Dec |
| Invoice # | 9300171 | 9300174 | 9300176 | 0000064-IN | 0000127-IN | 0000226-IN |
| **Hours Expended** | | | | | | |
| Professional | 2.0 | 2.0 | 3.0 | 2.0 | 1.0 | 1.0 |
| Paraprofessional | - | - | - | 1.3 | 0.5 | - |
| Total Hours | 2.0 | 2.0 | 3.0 | 3.3 | 1.5 | 1.0 |
| **Fees Incurred:** | | | | | | |
| Professional | $ 790.00 | $ 790.00 | $ 1,215.00 | $ 820.00 | $ 395.00 | $ 395.00 |
| Paraprofessional | - | - | - | 292.50 | 112.50 | - |
| Total Fees | 790.00 | 790.00 | 1,215.00 | 1,112.50 | 507.50 | 395.00 |
| Direct Expenses Incurred | 25.37 | 27.30 | 14.17 | 18.73 | 17.76 | 16.28 |
| Subtotal | 815.37 | 817.30 | 1,229.17 | 1,131.23 | 525.26 | 411.28 |
| Less 10% Holdback | (79.00) | (79.00) | (121.50) | (111.25) | (50.75) | (39.50) |
| Net Amount Invoiced | 736.37 | 738.30 | 1,107.67 | 1,019.98 | 474.51 | 371.78 |
| Amount Received | (736.37) | (738.30) | (1,107.67) | (1,019.98) | (474.51) | (371.78) |
| Unpaid Invoice amount | - | - | - | - | - | - |

9

|  | 2010 | | | | | |
|---|---|---|---|---|---|---|
|  | Jan | Feb | Mar | Apr | May | Jun |
| Invoice # | 0000308-IN | 0000351-IN |  | 0000471-IN | 0000527-IN | 0000585-IN |
| **Hours Expended** | | | | | | |
| Professional | 1.0 | 2.0 | - | 1.0 | 1.0 | 1.0 |
| Paraprofessional | 0.5 | - | - | - | - | - |
| Total Hours | 1.5 | 2.0 | - | 1.0 | 1.0 | 1.0 |
| **Fees Incurred:** | | | | | | |
| Professional | $ 450.00 | $ 900.00 | $ - | $ 450.00 | $ 450.00 | $ 450.00 |
| Paraprofessional | 112.50 | - | - | - | - | - |
| Total Fees | 562.50 | 900.00 | - | 450.00 | 450.00 | 450.00 |
| Direct Expenses Incurred | 14.34 | 16.96 | - | - | 11.80 | 8.40 |
| Subtotal | 576.84 | 916.96 | - | 450.00 | 461.80 | 458.40 |
| Less 10% Holdback | (56.25) | (90.00) | - | (45.00) | (45.00) | (45.00) |
| Net Amount Invoiced | 520.59 | 826.96 | - | 405.00 | 416.80 | 413.40 |
| Amount Received | (520.59) | (826.96) | - | (405.00) | (416.80) | (413.40) |
| Unpaid Invoice amount | - | - | - | - | - | - |

|  | 2010 | | | | | |
|---|---|---|---|---|---|---|
|  | Jul | Aug | Sept | Oct | Nov | Dec |
| Invoice # | 0000648-IN | | | | | |
| **Hours Expended** | | | | | | |
| Professional | 28.0 | | | | | |
| Paraprofessional | - | - | - | - | - | - |
| Total Hours | 28.0 | - | - | - | - | - |
| **Fees Incurred:** | | | | | | |
| Professional | $ 12,600.00 | | | | | |
| Paraprofessional | - | - | - | - | - | - |
| Total Fees | 12,600.00 | - | - | - | - | - |
| Direct Expenses Incurred | 61.44 | | | | | |
| Subtotal | 12,661.44 | - | - | - | - | - |
| Less 10% Holdback | (1,260.00) | | | | | |
| Net Amount Invoiced | 11,401.44 | - | - | - | - | - |
| Amount Received | | | | | | |
| Unpaid Invoice amount | 11,401.44 | | | | | |

10

10. On October 15, 2007, ZC filed its First Interim Application for allowance of interim compensation and expenses covering the period from May 15, 2007 through August 31, 2007 (Docket #213) requesting compensation for professional fees of $125,392.50, paraprofessional fees of $1,545.50 and expenses of $11,427.73, totaling $138,365.73. The Bankruptcy Court signed an order on September 17, 2010 (Docket #634), allowing ZC interim compensation of $126,938.00 in fees and $10,847.56 of expenses. This order reduced the allowed expenses by $580.17.

11. On January 30, 2008, ZC filed its Second Interim Application for allowance of interim compensation and expenses covering the period from September 1, 2007 through December 31, 2007 (Docket #286) requesting compensation for professional fees of $111,015.00, paraprofessional fees of $522.00 and expenses of $6,221.57, totaling $117,758.57. The Bankruptcy Court signed an order on September 17, 2010 (Docket #635), allowing ZC interim compensation of $111,537.00 in fees and $5,857.82 of expenses. This order reduced the allowed expenses by $363.75.

12. On October 2, 2009, ZC filed its Third Interim Application for allowance of interim compensation and expenses covering the period from January 1, 2008 through December 31, 2008 (Docket #534) requesting compensation for professional fees of $113,650.50, paraprofessional fees of $1,152.50 and expenses of $2,594.48, totaling $117,397.48. The Bankruptcy Court signed an order on January 28, 2010 (Docket #578), allowing ZC interim compensation of $114,803.00 in fees and $2,594.48 of expenses.

13. Copies of the invoices are attached as Exhibit "B" to this Final Application for allowance of compensation and reimbursement of out-of-pocket expenses for the 4th Interim Compensation Period for which no previous fee application has been filed. Accompanying each invoice is a list of professionals, paraprofessionals and support personnel providing services; their respective billing rates; the aggregate hours expended by each professional, paraprofessional and support person; a general description of the services rendered, summarized by discrete project; a detailed description of the services performed by each professional, paraprofessional and support person and the time expended, organized by debtor, by discrete project, by day and a reasonably detailed breakdown of the disbursements incurred. Invoices supporting the periods prior to January 1, 2009 are included in the interim applications previously filed with this Court.

14. A detailed analysis of the out-of-pocket expenses incurred showing the amount incurred in each expense category in each month during the Application Period and a breakdown of the monthly totals by Debtor are attached as Exhibit "C" to this third application for allowance of interim compensation and reimbursement of out-of-pocket expenses. Detailed expenses supporting the periods prior to January 1, 2009 are included in the interim applications previously filed with this Court.

15. A recap of the monthly professional fees and out-of-pocket expenses invoiced during the Application Period, showing the amounts incurred, the amounts held back pursuant to the terms of the Retention Order pending future application to the Bankruptcy Court are attached as Exhibit "D" to this Final Application for allowance of interim compensation and reimbursement of out-of-pocket expenses.

## Billing Practices

16.     It is ZC's customary practice to charge fees based on actual hours expended to perform its services at standard hourly rates established for each principal and employee as adjusted semi-annually. It is the customary practice of the Firm to bill clients for travel time consistent with guidelines of the jurisdiction.  Time entries are recorded in six minute increments.  Fees reflect economies resulting from the use of paraprofessional and support personnel to develop schedules and analyses, input computer data, perform research, work on fee applications, and other activities necessary to the efficient administration of a case.  So as not to burden clients who do not require such services, ZC does not include support services in the firm's overhead for the purpose of establishing billing rates.  Billing rates are generally representative of prevailing market rates, as awarded by other Courts in similar circumstances, for practitioners providing such services at a national level who have comparable skill and experience.

17.     ZC charges its clients only for reasonably incurred, out-of-pocket expenses associated with an assignment.  Except as necessary to comply with applicable court-mandated guidelines for allowance of professional fees and expenses or an applicable Administrative Order, all such expense billings are in accordance with the Firm's customary practices.  ZC personnel stay at convenient, quality hotels and eat at quality restaurants; ZC does not incur costs for luxury accommodations or deluxe meals and when prohibited by applicable administrative order does not bill clients for first class airfare. Except as follows, all expenses are billed at actual cost, exclusive of amortization of the cost of any investment, equipment or capital outlay: (i) internal charges for facsimile transmissions are $2.00 per page, (ii) internal photocopy charges are $.30 per page, and (iii) computer modeling charges are at standard hourly rates.

18.     ZC maintains contemporaneous records of the time expended and out-of-pocket expenses incurred in support of its billings for services. All such records are located in the Firm's offices and are available for inspection, subject to certain matters contained therein that may be privileged.

### Staffing and Approach

19.     As one of the world's leading financial advisory, interim management and litigation support firms, with a team of specialists in North America specializing in advising debtors, creditors, investors and court-appointed officials in formal bankruptcy proceedings and out-of-court workouts, ZC has significant qualifications and experience in these matters. ZC has a reputation for quality and breadth of experience, and a proven track record for success, earned by serving clients in numerous nationally prominent bankruptcy proceedings. A substantial portion of ZC's work is advisory and involves ZC's professionals counseling senior client personnel regarding high-level strategic and tactical issues. Consistent with its relatively unique practice, ZC's managing directors and professional staff consists of accomplished professionals primarily former "Big 4" partners or managers and senior industry and banking executives. Indeed, more than 50% of ZC's professionals have in excess of ten years of relevant business experience. The firm's internal structure and work approach are designed around its unusual staff composition of senior professionals. Individual staff members are assigned project roles, to bring to bear their particular talents and experience in view of the specific requirements of the engagement. ZC provides high value for its fees, efficiently leveraging its experienced professionals by directing client personnel to perform routine tasks.

## Summary of Services Provided and Results Achieved

20. During the Application Period of May 7, 2007 through July 31, 2010, ZC was required to render substantial professional services to deal with various critical issues faced by the Debtors related to both its Chapter 11 status and current business situation.

21. In particular, during the Application Period, ZC devoted substantial time to assist the Debtors with the analysis and review of various operating structures as well as understanding the financial impact of dissolving a shared services agreement with a separate entity.

22. In particular, during the Application Period, ZC devoted substantial time to assist the Debtors with the preparation of the Asset Purchase Agreement as well as provide expert testimony and perform other work necessary to obtain court approval for the potential sale of substantially all of the Debtor's assets. In addition to assisting in the preparation of all the documentation necessary to sell substantially all of the Debtor's assets and providing expert testimony at the court hearing, we were also successful in assisting the Debtor to negotiate terms with the acquirer to allow for the assumption of numerous leases, contracts, and other liabilities. Additionally, ZC helped identify operating leases that did not need to be assumed that ultimately resulted in substantial cost savings of approximately $20,000 per month ($240,000 on an annualized basis) to the Debtors business.

23. During the Application Period, ZC also devoted substantial time to assist the Debtors with the preparation and compilation of information for numerous reports required as part of the Chapter 11 process. These reports included the Debtors' monthly and quarterly trustee reports and ZC's Third and Final Fee Applications along with supporting analyses. This information was prepared timely and was critical in order to allow the Debtors to proceed quickly through the Chapter 11 process and provide information for all interested parties.

24. ZC also devoted significant efforts working with the Debtors developing DIP financing projections and analytical tools to assess the level of funding needed throughout the Chapter 11. These projections were of critical importance to the Debtors in order to ensure that there was sufficient cash available to pay vendors and employees and avoid disruptions to the business operations. These tools also enabled the debtors to better manage costs and have adequate liquidity for its operations.

25. Summarized below is a description of the services provided by ZC to the Debtors during the Application Period in each significant service area (See Exhibit "E" for hours performed on each Project). For the periods prior to January 1, 2009, these descriptions were provided in previous fee applications.

| Project # | Description: |
|---|---|
| 1 | Asset Analysis and Recovery - Identification and review of potential assets including causes of action and non-litigation recoveries. |
| 2 | Asset Disposition - Sales, leases (Section 365 matters), abandonment and related transaction work. |
| 3 | Business Operations - Issues related to debtor-in-possession operating in chapter 11 such as employee, vendor, tenant issues and other similar problems. |
| 4 | Case Administration - Coordination and compliance activities, including preparation of statement of financial affairs; schedules; list of contracts; United States Trustee interim statements and operating reports; contacts with the United States Trustee; general creditor inquiries. |
| 5 | Claims Administration and Objections - Specific claim inquiries; bar date motions; analyses, objections and allowances of claims. |
| 6 | Employee Benefits/Pensions - Review issues such as severance, retention, 401k coverage and continuance of pension plan. |
| 7 | Fee/Employment Applications - Preparations of employment and fee applications for self or others; motions to establish interim procedures. |
| 8 | Fee/Employment Objections - Review of and objections to the employment and fee applications of others. |
| 9 | Financing - Matters under Section 361, 363, and 364 including cash collateral and secured claims; loan document analysis. |
| 10 | Litigation - There should be a separate category established for each matter. |
| 11 | Meeting of Creditors - Preparing for and attending the conference of creditors, the Section 341(a) meeting and other creditors' committee meetings. |
| 12 | Plan and Disclosure Statement - Formulation, presentation and confirmation; compliance with the plan confirmation order, related orders and rules; disbursement and case closing activities, except those related to the allowance and objections to allowance of claims. |
| 13 | Relief from Stay Proceedings - Matters relating to termination or continuation of automatic stay under Section 362. |
| 14 | Accounting/Auditing - Activities related to maintaining and auditing books of account, preparation of financial statements and account analysis. |
| 15 | Business Analysis - Preparation and review of company business plan; development and review of strategies; preparation and review of cash flow forecasts and feasibility studies. |
| 16 | Corporate Finance - Review financial aspects of potential mergers, acquisitions and disposition of company or subsidiaries. |
| 17 | Data Analysis - Management information systems review, installation and analysis, construction, maintenance and reporting of significant case financial data, lease rejection, claims, etc. |
| 18 | Litigation Consulting - Providing consulting and expert witness services relating to various bankruptcy matters such as insolvency, feasibility, avoiding actions; forensic accounting, etc. |
| 19 | Reconstruction Accounting - Reconstructing books and records from past transactions and bringing accounting current. |
| 20 | Tax Issues - Analysis of tax issues and preparation of state and federal tax returns. |
| 21 | Valuation - Appraise or review appraisals of assets. |
| 22 | Other |

26.     In conclusion, by performing the above mentioned tasks, ZC has supported the Debtors in their efforts to; improve their liquidity position by controlling costs and maintaining DIP financing at levels sufficient to be able to maintain its base of customers and vendors. Additionally, all of these efforts were critical components in the Debtors ability to evaluative operating scenarios, complete their engineering strategy, maximize value in the sale process, and efficiently operate in a competitive marketplace.

## Compensation Sought

27.     In view of the assistance provided which precluded other employment, the results achieved, the value added, the requirement for ZC to finance its deferred compensation, ZC requests that it be awarded, at this time, a final allowance of compensation, inclusive of the 4th Interim Compensation Period and all prior interim application periods for professional services rendered in the sum of $386,589.00 and for actual and necessary out-of-pocket expenses incurred in the sum of $19,920.97, for a total amount of $406,509.97.

WHEREFORE, ZC respectfully requests (i) interim allowance of compensation for professional services rendered for the Debtors in the amount of $33,311.00 in fees during the 4th Interim Compensation Period, (ii) reimbursement of actual and necessary disbursements incurred by the Applicant during the 4th Interim Compensation Period in the amount of $621.11; (iii) allowance, on a final basis, in the sum of $386,589.00, together with reimbursement of actual and necessary out-of-pocket expenses incurred in the sum of $19,920.97 for the Final Application period; and (iv) such other and further relief as is just and proper.

Dated:     December 8, 2010
           New York, New York

*[signature]*

Jonathan Mitchell
**ZOLFO COOPER, LLC**
**Bankruptcy Consultants and**
**Special Financial Advisors**
1114 Avenue of the Americas, 41st Fl
New York, NY 10036
(212) 212-4060

*[signature]*
Notary Public

Elizabeth A. Lynch
Notary Public
State Of New York
New York County
Lic. #01LY6228074
My Comm. Exp. 9/13/14

19

Summary of Exhibits

- Exhibit A – Retention Documents
    a. Order Approving Kroll Zolfo's Cooper's Retention
    b. Application for Kroll Zolfo's Cooper's Retention
    c. Order Approving Zolfo's Cooper's Re-retention
    d. Application for Zolfo's Cooper's Re-retention
    e. Certification of Elizabeth Kardos in support of Re-retention
- Exhibit B -  2009 through 2010 Invoices
- Exhibit C - Detailed Breakdown of Expenses by Month
- Exhibit D - Breakdown of Invoices by Month
- Exhibit E – Breakdown of Hours into Project Type by Month